**GENCORP, INC., Plaintiff,**

v.

**AIU INSURANCE COMPANY, et al., Defendants.**

**No. 5:95–CV–2464.**

United States District Court, N.D. Ohio, Eastern Division.

May 20, 1997.

Opinion Modifying Decision June 6, 1997.

Dennis P. Monaghan, Thomas W. Ladd, McCarter & English, Newark, NJ, for Gencorp, Inc.

Peter I. Sheft, Jeffrey S. Leonard, Maria E. Cannon, Sheft, Golub & Kamlet, New York City, William F. Scully, Jr., Law Offices of William F. Scully, Jr., Cleveland, OH, for Riunione Adriatica Di Sicurta, Dairyland Ins. Co.

Margaret J. Orbon, Ann F. Frolik, Gordon K. Walton, Clausen Miller, Chicago, IL, Steven G. Janik, Janik & Dunn, Cleveland, OH, for American Intern. Underwriters, American Home Assurance, Granite State Ins. Co., National Union Fire Ins. Co. of Pittsburgh, PA.

Clifford C. Masch, Thomas P. Mannion, Reminger & Reminger, Cleveland, OH, for Allianz Versicherungs–A.G.

Theresa Wirtz Hajost, Mitchell A. Stearn, Alexander H. Gillespie, Sean M. Sweeney, Edward J. Riccobene, Andrew Butz, Ann T. Dorsett, Gilberg & Kurent, Washington, DC, William R. Holland, Nancy Holland Myers, Holland & Myers, Akron, OH, for American Ins. Co., Fireman's Fund Ins. Co.

David L. Lester, Ulmer & Berne, Cleveland, OH, for American Re-Insurance Co.

Wayne J. Belock, Ellyn Tamulewicz, Donald G. Drinko, Crosby, Belock & O'Brien, Cleveland, OH, for Associated Intern. Ins. Co.

David J. Fagnilli, Davis & Young, Cleveland, OH, Michael J. Baughman, Cohen & Russell, Chicago, IL, for Cigna Specialty Ins. Co., Central Nat. Ins. Co. of Omaha, Insurance Co. of North America.

John C. Weisensell, Amer, Cunningham, Brennan, Akron, OH, David J. Fagnilli, Davis & Young, Cleveland, OH, Jerome J. Duchowicz, Teresa R. Williams, Michelle B. Sage, Daniel P. Caswell, Joseph B. Royster, G. Bora, Haskell & Perrin, Chicago, IL, Michael J. Baughman, Cohen & Russell, Chicago, IL, for Continental Cas. Co., Fidelity and Cas. Ins. Co. of N.Y.

Chris T. Nolan, Peter D. Janos, Perantinides & Nolan, Akron, OH, Richard M. Hagstrom, Daniel S. Weiss, Zelle & Larson, Minneapolis, MN, for Employers Ins. of Warsau, National Cas. Co.

Stephen M. Kelley, Timothy J. Clarke, Bradford S. Moyer, Kelley, Casey & Clarke, Detroit, MI, for Employers Reinsurance Corp., St. Paul Fire and Marine Ins. Co.

Daniel F. Gourash, Margaret M. Koesel, Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, OH, for Federal Ins. Co.

James Michael Lyons, Jr., Buckingham, Doolittle & Burroughs, Akron, OH, Louis G. Adolfsen, Karen L. Campbell, Alla E. Huppert, Melito & Adolfsen, New York City, Thomas W. Hardin, Hardin & Schaffner, New Philadelphia, OH, for First State Ins. Co., Twin City Fire Ins. Co.

James W. Barnhouse, Kitchen, Deery & Barnhouse, Cleveland, OH, Karen Mendalka Hoerrner, Paul D. Drobbin, Robinson, St. John & Wayne, Newark, NJ, for International Ins. Co., International Surplus Lines Ins. Co.

Gerald V. Weigle, Jr., Carl J. Stich, Jr., Anne Erskine Black, Dinsmore & Shohl, Cincinnati, OH, for Liberty Mut. Ins. Co., Lexington Ins. Co., Ltd.

Michael P. Comiskey, John B. Haarlow, Daniel I. Schlessinger, Michael Yetnikoff, Jennifer A. O'Malley, Lord, Bissell & Brook, Chicago, IL, Dennis J. Bartek, Akron, OH, for Certain Underwriters at Lloyd's, London, Certain London Market Ins. Companies, Bellefonte Ins. Co., Ltd., CNA Reinsurance of London, Ltd., North Atlantic Ins. Co., Ltd., St. Katherine Ins. Co., Ltd., Stronghold Ins. Co., Winderthur Swiss Ins. Co., Ltd.

Rody P. Biggert, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Peter E. Romo, Jr., Francis J. Torrence, Brent Clark, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, CA, Ross D. Roloff, Michael R. Gregg, Mary K. McGahey, Merlo, Kanofsky & Brinkmeier, Chicago, IL, for Everest Reinsurance Co., Gibraltar Cas. Co.

Alton L. Stephens, Jr., John T. Murphy, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, David Ross, Michelle J. Sheehan, Reminger & Reminger, Cleveland, OH, Daniel F. Gourash, Robert D. Anderle, Porter, Wright, Morris & Arthur, Cleveland, OH, for Republic Ins. Co.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, Don Benson, Herbert, Treadon & Benson, Canton, OH, Joseph F. Scott, Canton, OH, for United Ins. Co., United Nat. Ins. Co.

Mark S. Hura, Law Offices of Mark S. Hura, Seven Hills, OH, David E. Trainor, Darlene M. Oliver, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Lumbermens Mut. Cas. Co.

John C. Weisensell, Amer, Cunningham, Brennan, Akron, OH, David J. Fagnilli, Davis & Young, Cleveland, OH, Jerome J. Duchowicz, Teresa R. Williams, Michelle B. Sage, Daniel P. Caswell, Joseph B. Royster, G. Bora, Haskell & Perrin, Chicago, IL, for Continental Cas. Co.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Genco Ins. Ltd.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION

The plaintiff filed this action against more than three dozen defendant insurance companies, seeking, *inter alia*, a declaration that the defendants are obligated to defend and indemnify the plaintiff with respect to potential liabilities arising out of six hazardous waste sites. At the Case Management Conference on February 16, 1996, the Court placed the case on the complex track. As discovery developed, several parties informed the Court they wished to move for partial summary judgment with respect to liability on certain of the policies to which they be-

lieve an absolute pollution exclusion endorsement applies. The Court established a schedule for filing for partial summary judgment on issues related to those two policies.

The following parties filed motions for partial summary judgment: Certain Underwriters at Lloyd's, London ("the London Market Defendants") (Docket No. 189); Federal Insurance Company (Docket No. 205); American Re–Insurance Company (Docket No. 208); International Insurance Company as successor in interest to International Surplus Lines Insurance Company (Docket No. 209); Riunione Adriatica di Sicurta (Docket No. 210); St. Paul Fire and Marine Insurance Company (Docket No. 211); Century Indemnity Company as successor in interest to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company (Docket No. 212); Central National Insurance Company of Omaha (also Docket No. 212); First State Insurance Company (Docket No. 213); Everest Reinsurance Company, formerly known as Prudential Reinsurance Company (Docket No. 214); Gibraltar Casualty Company (also Docket No. 214); Lumbermens Mutual Casualty Company (Docket No. 215); Associated International Insurance Company (Docket No. 216); Fireman's Fund Insurance Company (Docket No. 217); AIU Insurance Company (Docket No. 220); Lexington Insurance Company (Docket No. 221); Granite State Insurance Company (Docket No. 222); Republic Insurance Company (Docket No. 223); and Allianz Versicherungs AG (Docket No. 224).

The motions are all based upon the same premise, which will be discussed in more detail *infra:* the defendants argue they can take advantage of a 1994 endorsement to an underlying insurance policy which retroactively eliminated insurance coverage for pollution-related matters.

Gencorp has filed a brief in response to the summary judgment motions (Docket No. 247), and the various defendants have filed reply briefs. The Court entertained oral argument on the motions on February 27, 1997, and allowed the parties to file post-argument briefs. The Court has now fully considered the motions. For reasons set forth below, the Court denies the motion of Republic Insurance Company; grants in part and' denies in part the motions of Riunione Adriatica di Sicurta, First State Insurance Company, Fireman's Fund Insurance Company and AIU Insurance Company; and grants the motions of the remaining defendants. However, for reasons set forth in Part V *infra,* the Court shall delay placing a judgment entry on the docket until June 6, 1997.

## II. BACKGROUND FACTS

In this lawsuit, plaintiff Gencorp Inc. ("Gencorp") seeks a declaration of coverage and money damages under various insurance policies for pollution-related claims and losses at six landfills or industrial sites in Ohio, Michigan and Connecticut. *See generally* Second Amended Complaint, Docket No. 184.

During the time period in question, Gencorp's underlying, or first-level umbrella, insurer was Genco Insurance Limited ("Genco").[1] Genco policies provided umbrella liability coverage for the two periods in question.[2] Genco Policy No.' 47002 ("Genco 47002" or "47002") covered the period of January 1, 1975 to January 1, 1978. Genco Policy No. 47005 ("Genco 47005" or "47005") covered the period from January 1, 1979, to December 1, 1982.[3] In addition

---

1. Genco is a captive insurance company, wholly owned by Gencorp. This relationship has not prevented Gencorp and Genco from being adversaries in the past, as the discussion *infra* indicates.

 Gencorp was named as a third-party defendant in this case by defendant Continental Casualty Corp. (Docket No. 104). The Court stayed discovery on the third-party complaint on June 28, 1996 (Docket No. 172).

2. It appears from an examination of the policies that Gencorp had a number of underlying insurance policies in particular areas such as automo-

bile, malpractice, product liability and aircraft liability. The Genco policy was thus titled an "umbrella excess third party liability" policy because it would pay in excess of the limits on the underlying policies.

3. The Court is astonished at the varying representations in the record on a simple but critical (and in some cases dispositive) matter of fact: the coverage period of Genco 47005. A copy of the policy is submitted by a number of parties, including Gencorp in the appendix to its response brief. (Docket 247 at Exh. B). The face of the policy lists a term of January 1, 1979, to

to the underlying umbrella policies with Genco, Gencorp had numerous policies with the moving defendants under which coverage would not be triggered until coverage under the applicable Genco umbrella policy was exhausted. To one degree or another, the language in all of these policies "follows form" to the applicable Genco policy, i.e., the policies state that coverage is under the same terms and conditions as the underlying umbrella policy.

Gencorp sued many of the same insurers (including Genco) in an insurance coverage action in state court in Ohio involving different sites than those at issue here. In resolution of their dispute in the prior action, Gencorp and Genco executed a Settlement Agreement on April 7, 1994. (Response brief at Exh. D). The settlement specifically addressed coverage under policies 47002 and 47005. (Settlement Agreement at ¶ 1.1). The settlement agreement called for Genco to pay $19,910,000 to Gencorp in exchange for dismissal of the state lawsuit with prejudice. (*Id.* at ¶ 3.2). In turn, Gencorp agreed to release Genco from all claims arising out of policies 47002 and 47005. (*Id.* at ¶ 3.4).

Notwithstanding this general release of claims, the settlement agreement went a step further. Paragraph 3.6 provided the following language which is at the heart of the instant litigation:

3.6 *Policy Endorsement Amendment.* Subject only to Genco's payment and Gencorp's receipt of the Settlement Amount pursuant to Section 3.2, Gencorp agrees that Policy Numbers 47002 and 47005 each shall thereupon be amended, by separate endorsement *retroactive in fact and effect to the date each of said policies were issued,* each said separate endorsement to read:

*THIS POLICY SHALL NOT APPLY:*

to any liability whatsoever for:

(1) bodily injury, personal injury or property damage arising out of the seepage, discharge, dispersal, release or escape or transmission of any solid, liquid, or resulting from: gaseous, thermal, audio or electromagnetic irritant, including, but not limited to, smoke, vapors, soot, waves, fumes, acid, alkalies, fibers, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants into, or upon, land, the environment or any watercourse or body of water; or

---

December 1, 1979. However, endorsements in the policy extend the termination date several times. Endorsement Ten extended the termination date until December 1, 1980. Endorsement Twelve extended the date until December 1, 1981. Endorsement Fifteen extended the date until December 1, 1982. Endorsement Seventeen extended the date until December 1, 1983, but that endorsement was rendered null and void by Endorsement Eighteen, which stated that the policy was canceled as of December 1, 1982.

Thus it appears from a close inspection of the document that the term of Genco 47005 was January 1, 1979 to December 1, 1982. However, even the parties to the policy—Gencorp and Genco—wrongly state the policy period. Gencorp's response brief states that the policy period was January 1, 1979 through January 1, 1980. (Response brief at 1). Genco has represented on several occasions that the policy's coverage began on January 1, 1978, rather than January 1, 1979. *See* Genco's affirmative defense, Docket No. 148 at p. 3; Genco's response to Request for Admissions filed by Certain Underwriters at Lloyd's, London at ¶ 3.

The policy term has been erroneously represented by other parties as well. For example, First State Insurance Company apparently relied upon Genco's representations and represented the policy term as January 1, 1978 to January 1, 1982 (Docket No. 213). Other parties, perhaps in reliance upon Genco's representations, have moved for summary judgment on policies covering the year 1978. *See, e.g.,* motions filed by Riunione Adriatica di Sicurta (Docket No. 210), Fireman's Fund Insurance Company (Docket No. 217) and AIU Insurance Company (Docket No. 220).

Suffice it to say that the Court expended numerous extra hours in determining the outcome of these motions because of confusion generated by the parties providing various purported dates of coverage for Genco 47005. The Court was understandably hesitant to proceed with the assumption that the very parties who created the insurance contract were wrong in representing matters of simple fact to the Court. Upon close examination of the record, however, the Court has concluded that the period of January 1, 1979 through December 1, 1982, is the term of coverage of Genco 47005 and proceeds in its analysis accordingly. If the Court is wrong, the parties are welcome to move for reconsideration of this determination and to direct the Court to portions of the record to support their positions.

(2) any liability loss, cost or expense of the insured arising out of any direction or request by any governmental authority, that pollutants be tested for[,] monitored, cleaned up, removed, contained, treated, detoxified or neutralized; or

(3) any payment for the investigation or defense of any loss, injury or damage, or any cost, fine or penalty, or for any expense or claim or suit related to any of the above.

Notwithstanding the generality of this exclusion, it shall not exclude coverage for claims by any person alleging personal injury, bodily injury or property damage caused by a product when such damage occurs or is alleged to have occurred after the product has been sold and before the product has become a waste product or part of a waste product.

(emphasis added). This endorsement will be referred to hereinafter as the "absolute pollution exclusion." The settlement agreement also includes the following paragraph which Gencorp argues is relevant to the instant case:

3.12 *Third-Party Beneficiaries:* Neither Gencorp nor Genco intend to confer to any other person any right or benefit under this Agreement. Nothing herein will be deemed to confer, or interpreted as conferring, to any third person any right to institute suit against either Genco or Gencorp for purposes of obtaining any right or benefit under this Agreement.

Pursuant to Paragraph 3.6, an endorsement was added to policies 47002 and 47005 which incorporated the above-quoted absolute pollution exclusion. Each endorsement stated that it was "effective from inception" of the policy. *See* Endorsement Eleven to Policy 47002; Endorsement Nineteen to Policy 47005.

Presumably because of the endorsements, Gencorp did not sue Genco in the instant action. However, Gencorp did sue other underlying umbrella insurers with whom it had contracted during periods of time not covered by 47002 and 47005. It also sued insurers providing coverage in excess of the underlying insurance for all periods in which

Gencorp may face environmental liability. The insurance companies whose excess coverage involves the periods of time covered by policies 47002 and 47005 have moved for summary judgment on the basis that their policies "follow form" to the underlying umbrella insurance policy—a policy which now includes an absolute pollution exclusion. In other words, they argue they can take advantage of the exclusion which applies retroactively to the policy from which their policies derive their terms and conditions. Gencorp makes a number of contract-based arguments opposing the defendants' position and also asserts that equity, public policy and common sense dictate against accepting the defendants' arguments.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). *See e.g., U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985) and cases cited therein. The Court's favorable treatment of facts and inferences, however, does not relieve the nonmoving party of the responsibility "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Where the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552 (equating the standard for a directed verdict under Rule 50(a) with the summary judgment standard of Rule 56).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## IV. ANALYSIS

### A. Introduction

■ This case presents a unique question: When parties to an underlying insurance contract amend the policy retroactively, what is the effect of such an amendment on excess policies which "follow form" to the underlying policy's terms and conditions? Both sides attempt to bolster their positions with insurance-related case law, but the cases are uniformly distinguishable from the instant situation and merely illustrate the lack of precedent on this precise issue. Lacking specific guidance from insurance case law, the Court is left to apply the general law of contracts.

■ An insurance policy is a contract, and under Ohio law courts construe insurance contracts in accordance with the same rules as other written contracts. *Affiliated FM Ins. v. Owens–Corning Fiberglas Corp.*, 16 F.3d 684 (6th Cir.1994) (citing *Rhoades v. Equitable Life Assurance Soc'y*, 54 Ohio St.2d 45, 374 N.E.2d 643 (1978)).

■ The interpretation of a written contract is generally a matter of law for the court. *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214, 567 N.E.2d 262 (1991). The court is to interpret the contract to carry out the intent of the parties. *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974) (paragraph one of the syllabus). The parties' intent is presumed to reside in the language employed in the agreement. *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987) (paragraph one of the syllabus). If a contract is clear and

unambiguous, the court need not concern itself with rules of construction or go beyond the plain language of the agreement to determine the rights and obligations of the parties. *Latina*, 57 Ohio St.3d at 214, 567 N.E.2d 262; *Seringetti Constr. Co. v. Cincinnati*, 51 Ohio App.3d 1, 4, 553 N.E.2d 1371 (1988).

### B. Discussion

This case is complicated by the fact that each summary judgment motion involves at least two contracts. First is the contract between each defendant and Gencorp. Second is the contract between Genco and Gencorp—a contract upon which every other contract relies. The Court must be mindful of the coexistence of these contracts in order to properly apply contract law principles.

■ With respect to most of the motions at issue, Gencorp's position is undercut by the language it agreed to include and to apply retroactively, "in fact and effect," in Genco policies 47002 and 47005. Settlement Agreement at ¶ 3.6. This endorsement added an absolute pollution exclusion to the underlying policies, "effective from inception" of the policies. As will be discussed in more detail *infra*, the defendants agreed to abide by the underlying Genco policies to determine their own scope of liability. Because they bargained to accept the same terms as Genco received, as a matter of contract law they are entitled to take advantage of the absolute pollution exclusion.[4]

■ Gencorp makes a number of contract-based arguments that the exclusion, negotiated with Genco, should not be applicable to the other insurers. First, it argues there was no consideration for what would amount to a modification of the insurance contract between Gencorp and the defendants. The Court disagrees. Gencorp clearly received significant consideration—in the form of nearly § 20 million—in exchange for adding the endorsement to policies 47002 and 47005. And it is hornbook law that "if the consideration given is sufficient to support a contract

---

4. Absolute pollution exclusions are enforceable. *Park–Ohio Industries, Inc. v. Home Indemnity Co.*, 975 F.2d 1215, 1222 (6th Cir.1992). Indeed, Gencorp does not attempt to argue that the exclusion is unenforceable.

it does not matter from or to whom it moves." *Coldwell Banker Residential Real Estate Services Inc. v. Bishop*, 26 Ohio App.3d 149, 151, 498 N.E.2d 1382 (Hamilton Co.1985) (citing Restatement of Contracts 2d, section 71(4) (1981)). Second, as will be discussed *infra*, many of the defendants apparently anticipated that the underlying contract might be amended and included provisions in their own contracts with Gencorp stating that coverage would be subject to the underlying policy's terms and conditions, *including changes by endorsement*.[5] There is clearly no need for those defendants, who bargained to be bound by future changes, to provide new consideration to take advantage of endorsements favorable to them.[6]

■ Gencorp next argues that a contract should be interpreted with the goal of discerning the intent of the parties. It asserts it did not intend to have the absolute pollu-

tion exclusion affect its contractual relationship with the defendants. Gencorp argues that the language of the contracts is sufficiently ambiguous to permit the admission of extrinsic evidence to determine the true intent of the parties.

■ The Court does not agree that extrinsic evidence need be consulted. A court should resort to extrinsic evidence only when an ambiguity exists in the four corners of the contract itself. So long as the contract is unambiguous, the Court should interpret the contract according to its terms. As will be discussed in detail with respect to each contract in the following section, the language of the contracts between Gencorp and the defendants permits no other conclusion; the parties agreed and intended that the insurers would be bound by the terms and conditions of the underlying umbrella insurance agreement, i.e., the Genco policy. Thus

---

5. Those defendants include the London Market Defendants (Docket No. 186); Central National Insurance Company of Omaha (Docket No. 212); First State Insurance Company (Docket No. 213); Lexington Insurance Company (Docket No. 221); American Reinsurance Company (Docket No. 208); Riunione Adriatica di Sicurta (Docket No. 210); and Associated International Insurance Company (policy XS 100597) (Docket ·No. 216). Other companies including similar language incorporating renewals, replacements or rewrites were International Insurance Company (Docket No. 209), AIU Insurance Company (Docket No. 210), St. Paul Fire and Marine Insurance Company (Docket No. 211), and Granite State Insurance Company (Docket No. 222).

The first four defendants named in the above paragraph had policies with language stating they were subject to the terms and conditions "as are contained in *or as may be added*" to the underlying umbrella policies *"prior to the happening of an occurrence for which claim is made hereunder ..."* (emphasis added). Gencorp argues that because the absolute pollution exclusion endorsement was not executed until 1994, the exclusion was neither "contained in" nor "added" to the policy prior to the "occurrences" at issue. It is the function of the Court to construe the contracts. The Court is of the view that Gencorp's agreement to incorporate the absolute pollution exclusion "retroactive[ly] *in fact and effect"* to the first day of the policies undercuts Gencorp's argument. As a matter of law, the exclusion must be interpreted as having existed on Day One of the policies; therefore, the exclusion was "contained in" the policies prior to the occurrences at issue.

6. A handful of defendants' policies did not explicitly address the issue of subsequent endorse-

ments. These include the policies of Federal Insurance Company (Docket No. 205); Century Indemnity Company (Docket No. 212); Associated International Insurance Company (policy no. AEL 00285) (Docket No. 216); Lumberman's Mutual Casualty Company (Docket No. 215); and Allianz Versicherungs AG (Docket No. 224).

It is clear from industry practice in general and the applicable Genco policies in particular that insurance policies are evolving documents with endorsements added on a frequent basis. In the instant case, Genco 47002 contained eleven endorsements; 47005 contained nineteen. Some of these endorsements made retroactive changes to the policies. For example, endorsement sixteen to policy 47005, executed June 8, 1982, increased the aggregate limit for products-related liability retroactively to December 1, 1980. No party argues that the upper-level insurers would be exempted from this change in the policy because it occurred retroactively.

Construing the documents as a whole, it is untenable to assume the contracting parties, who agreed to abide by the terms of the underlying contract, intended to be bound by the policies only as originally written. Moreover, the Court notes that it was Gencorp which voluntarily placed into the underlying agreement the endorsement which was expressly made "effective from inception." Given these facts and circumstances, and cognizant of its duty to construe contracts, the Court is of the view that even those insurers whose contracts did not expressly address the issue of subsequent endorsements are entitled to incorporate the absolute pollution exclusion as a term of their policies.

the defendants' insurance policies effectively incorporate the terms and conditions of the underlying insurance policy, which includes the absolute pollution exclusion. The fact that Gencorp might not have intended to release the defendants from liability does not affect the rights of the defendants who had bargained with the plaintiffs that their obligations would rest upon the terms of the underlying policy. In sum, the intent of Gencorp at the time it agreed to add the absolute pollution exclusion in exchange for $19.91 million from Genco is not relevant; what is relevant is the-manifested intent of Gencorp and the defendants to abide by the Genco policies' terms.[7]

 remaining contract-based arguments are equally unavailing. For example, it states repeatedly that the retroactive endorsement amounts to a "unilateral" modification of the insurance contracts with the defendants. *See, e.g.,* Response brief at 17; post-argument brief at 4. There was nothing "unilateral" about the addition of the absolute pollution exclusion; it was the inserted as part of an agreement with Genco in which, Gencorp received $19.91 million. The fact that the endorsement benefits insurers who were not a part of the Gencorp–Genco settlement does not make the endorsement a "unilateral" modification.[8]

7. Even if the Court were to have found that an ambiguity with respect to some or all of the policies exists, it would have been an ambiguity created not by the defendants, but by Gencorp in adding an endorsement retroactive "in fact and effect" to the starting date of the underlying contracts. As such, the Court would be bound to observe the hornbook adage that contracts are to be construed against the drafter. In the Court's view, this overrides Gencorp's reliance upon another adage that questions regarding insurance coverage be resolved in favor of the insured.

8. Clearly Gencorp either knew or should have known that changes to the underlying umbrella insurance contract would affect the excess contracts which relied upon the underlying contract's terms and conditions. As noted previously, this was the nineteenth endorsement to policy 47005 and the eleventh endorsement to policy 47002; there is no argument the parties did not intend other retroactive endorsements to apply to the excess carriers.

9. Gencorp all but concedes it did not have to insert the absolute pollution exclusion endorse-

██ Gencorp notes further that paragraph 3.12 of the settlement agreement, entitled "Third–Party Party Beneficiaries," expresses the intent of Gencorp and Genco not to confer any benefit on a third party. However, the defendant insurers are not in the position of third-party beneficiaries. Rather, they are parties to their own contracts with Gencorp which incorporate the terms and conditions of the Genco agreement.

██ Finally, Gencorp argues that "equity, public policy and common sense preclude modification." (Response Brief at 17). It says the defendants, who received years of premium payments from Gencorp, will receive an unfair financial windfall by being permitted to take advantage of the absolute pollution exclusion. It further argues that a decision in favor of the defendants would undermine the sound public policy of resolving disputes short of full-blown litigation. The Court agrees that the defendants are benefiting from a fortuitous change in the underlying contract. However, such fortuity was the product of Gencorp's willingness to insert the absolute pollution exclusion into the contract—a circumstance clearly within Gencorp's control.[9] Gencorp, presumably a sophisticated business entity, cannot call upon the court to undo what may have turned out to be an unwise business decision.[10]

ment into the Genco contract. Rather, the endorsement "was only one of several methods by which the parties could have effectuated the purpose of this consideration, which was to limit Genco's liability for claims arising out of pollution." (Response brief at 18–19). Had Gencorp chosen a less sweeping manner of memorializing its settlement, the Court would not be considering these motions.

10. Gencorp argues that the defendants' position is absurd because by the defendants' reasoning, the excess insurers would be required to *expand* their coverage if the underlying policy were amended retroactively to broaden coverage. Gencorp's hypothetical scenario is not before the Court today and need not be considered. For the purposes of this case, it is sufficient to note the defendants obviously believed the underlying insurer would negotiate in its own best interest and would not broaden its own scope of liability. In other words, the defendants relied upon the underlying insurer's motivation to get its best deal. Moreover, the defendants could avoid the possibility of deleterious retroactive endorse-

In sum, the Court holds that the absolute pollution exclusion, which by its own terms was "effective from inception" (policy 47002 endorsement eleven and policy 47005 endorsement nineteen) and in Gencorp's words was "retroactive in fact and effect to the date each of said policies were issued" (Settlement Agreement at ¶ 3.6), applies to the contractual relationships between Gencorp and the defendant insurers whose policies were linked to the terms and conditions of the underlying policy.

This holding is not dispositive of all of the motions because a number of movants, perhaps confused by conflicting information in the record on the coverage dates of the underlying policies, sought summary judgment for policies not linked to Genco policies 47002 or 47005. Thus the Court proceeds to a discussion of the language and terms of each policy and a specific pronouncement on the summary judgment motion of each defendant.

### C. The Individual Motions

#### 1. Certain Underwriters at Lloyd's, London (Docket No. 189)

These defendants ("the London Market Defendants") move for summary judgment on policies UJLO108 and UJLO109. Both policies cover calendar year 1977. Policy UJLO108 is part of the first layer of policies in excess of Genco policy 47002. Policy UJLO109 is a part of the next higher layer of policies. Both policies refer to Genco as the underlying umbrella insurer. The relevant language in both policies states:

> This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the said Underlying Umbrella Policy/ies prior to the happening of an occurrence for which claim is made hereunder and should any alteration be made in the premium for the Underlying

Umbrella Policy/ies then the premium hereon shall be adjusted accordingly.

(Exhs. A and B). For reasons set forth previously, the Court holds that this language effective incorporates the absolute pollution exclusion, which was made retroactive in fact and effect to the first day of the policy. Therefore, the Court grants the London Market Defendants' motion for partial summary judgment with respect to policies UJLO108 and UJLO109.

The London Market Defendants remain in the case because of claims related to policies issued in years not covered by Genco underlying policies 47002 or 47005.

#### 2. Federal Insurance Company (Docket No. 205)

Federal Insurance Company moves for summary judgment on excess policy 79220025 covering calendar year 1975. The relevant language in the policy states:

> In consideration of the payment of the required premium and subject to all the terms of this Policy, the Company agrees to pay on behalf of the Insured **LOSS** resulting from any occurrence insured by the terms and provisions of the First **UNDERLYING INSURANCE** policy scheduled in Item 6 of the Declarations (except for the Limits of Liability and defense provisions, if any). The insurance afforded by this policy shall apply only in excess of and after all **UNDERLYING INSURANCE** (as scheduled in Item 6 of the Declarations) has been exhausted.

(Exh. A) (boldface in original). Genco 47002 is listed as the "First Underlying Insurance policy" in the "Item 6" to which the above language refers. For reasons set forth in the prior discussion, the Court grants summary judgment on the basis of the inclusion of the absolute pollution endorsement into the underlying contract.

Federal Insurance Company remains a defendant in the case because of claims related to policies issued in years not covered by Genco underlying policies 47002 and 47005.

ments to the underlying policy. They could state in their own policies that retroactive endorsements to the underlying policy would be applicable to the excess policy only with the defendants'

express consent. The Court does not believe that the decision in this case, although unfortunate in the view of Gencorp, is either absurd or damaging to the insurance industry.

### 3. American Re–Insurance Company (Docket No. 208)

American Re–Insurance Company moves for summary judgment with respect to policy M1027784 covering January 1, 1976 to January 1, 1977. The relevant language states:

Except as may be inconsistent with this Certificate, the coverage provided by this Certificate shall follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Certificate, including any change by endorsements. The company shall be notified of any changes in coverage or premium in such underlying insurance and copies thereof shall be furnished to the Company upon request.

(Exh. A). The "underlying insurance ... immediately preceding the layer" of American Re–Insurance's coverage was Genco 47002. (Id.) For reasons set forth previously, the Court grants American Re–Insurance's motion for summary judgment.

American Re–Insurance remains a defendant in this case because of claims related to other policies issued in years not covered by Genco policies 47002 or 47005.

### 4. International Insurance Company (Docket No. 209)

International Insurance Company moves for summary judgment as successor in interest to International Surplus Lines Insurance Company, which issued the following policies: XSI 5769 and XSI 5932, both covering December 1, 1979 to December 1, 1980; XSI 7189 and XSI 7190, both covering December 1, 1980 to December 1, 1981; and XSI 7753 and XSI 7754, both covering December 1, 1981 to December 1, 1982.[11] The relevant language in each policy stated:

(1) Excess Liability Indemnity

To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance described in item four (4) of the declarations.... The provisions of the immediate underlying policy are incorporated as a part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to the same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy.

(Exhs.3A–3F). Item 4 in each policy declares the underlying insurance is established "as per policy number 47005 issued by Genco Insurance Limited." (d.). Moreover, "underlying insurance" is defined in the definitions section of the policies as "the insurance policies described in item 4 in the declarations and includes any renewal or replacement of such policies." (Id.)

For reasons set forth previously, the Court grants International Insurance Company's motion with respect to all six policies. International Insurance Company remains a defendant in this case because of claims related to other policies issued in years not covered by Genco policies 47002 or 47005.

### 5. Riunione Adriatica di Sicurta (Docket No. 210)

This defendant ("Riunione") has moved for summary judgment on policies EL–1773, covering February 1, 1977 to January 1, 1978; EL–2401, covering January 1, 1978 to January 1, 1979; EL–3120, covering January 1, 1979 to December 1, 1979, and EL–4261, covering December 1, 1979 to December 1, 1980.

As the Court has noted previously, the relevant Genco policies covered January 1, 1975 through January 1, 1978 (policy 47002) and January 1, 1979 through December 1, 1982 (policy 47005). Thus policy EL–2401, covering calendar year 1978, is not properly the subject of this summary judgment motion. Summary judgment is denied with respect to policy EL–2401.

Policies EL–1773 and EL–3120 contained the following language:

It is agreed that this policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all re-

---

11. The coupled policies issued different layers of insurance coverage.

spects including changes by endorsement and the Insured shall furnish the Company with copies of such changes.

(Exh. A and C).

From this point the Riunione policies are not a model of clarity. Policy EL–1773 does not identify the primary insurer other than saying "as on file." However, it appears undisputed elsewhere in the voluminous record in this case that Genco 47002 was the primary insurer for the time period covered by EL–1773.

Policy EL–3120 identifies Genco 47002 as the primary insurer. However, during the time period covered by EL–3120, Genco 47005, not 47002, was the primary insurer. Although the policy misidentified the primary policy number, such an error is harmless because both 47002 and 47005 contained the absolute pollution exclusion upon which Riunione relies.

Policy EL–4261's coverage language stated it would "indemnify the Insured for such loss as would have been payable under all of the terms of the Liability coverages afforded by the underlying policies listed in Item 3 of the declarations ..." (Exh. D). Item 3 refers to Genco 47002. This too is erroneous because the policy covered a period in which 47005 was the underlying insurer. Again, the error is harmless because both policies contained the absolute pollution exclusion.

In sum, the Court grants in part and denies in part Riunione's motion. The motion is granted with respect to policies EL–1773, EL–3120 and EL–4261 because the policies involved periods in which the absolute pollution exclusion applies. It is denied with respect to EL–2401.

6. *St. Paul Fire and Marine Insurance Company* (Docket No. 211)

This defendant ("St.Paul") moves for partial summary judgment on policy 534XA6052, which covered January 1, 1973 through January 1, 1976. The relevant language in the policy stated:

> It is agreed that this Policy, except as herein stated, is subject to all conditions, agreements and limitations of and shall follow the Primary Insurance in all respects, including changes by endorsement and the Insured shall furnish the Company with copies of such changes. It is further agreed should any alteration be made in the premium for the policy/ies of the Primary Insurers during the period of this Policy, then the premium hereon other than the Minimum Premium shall be adjusted accordingly.

(Exh. 1). "Primary Insurance" is defined as the policy or policies described in Item 4 of the policy. Item 4 identifies the primary insurance as a Chubb & Son Inc. ("Chubb") policy. (*Id.*). Thus the St. Paul contract follows the parameters of the Chubb policy. For reasons not made clear to the Court but agreed to by both the plaintiff and the defendant, the Chubb policy is the same policy as Federal Insurance Company policy 79220025 discussed at page 17 *supra.*[12] As discussed previously, policy 79220025 follows form to the "First Underlying Insurance" which is identified as 47002.

Thus St. Paul, by following form to the Chubb policy which in turn follows form to 47002, may incorporate the absolute pollution exclusion with respect to coverage for the period of January 1, 1975 to January 1, 1976. The Court grants summary judgment to St. Paul with respect to that year of policy 534XA6052. Of course, this decision has no effect on St. Paul's potential liability for the period of January 1, 1973 to January 1, 1975, a period during which 47002 was not the underlying policy.

7. *Century Indemnity Company* (Docket No. 212)

This defendant ("Century") is successor to CIGNA Specialty Insurance Company, which is formerly known as California Union Insurance Company. Century moves for summary judgment on the basis of policy numbers ZCX 003870, covering December 1, 1979, to December 1, 1980; ZCX 004287, covering December 1, 1980 to December 1,

12. Apparently Chubb & Son Inc. and Federal Insurance Company are the same company, having undergone a name change at some unidentified time.

1981; and ZCX 006039, covering December 1, 1981 to December 1, 1982.

The policies contain the following language:

> NOW, this Certificate is to indemnify the Insured in accordance with the applicable insuring agreements, exclusions and conditions of the primary insurance for excess loss as specified in Item 3 (Description of Excess Insurance) of the declarations.

(Exhs. 10 and 11).[13] Each lists as the primary insurer Genco with the policy number "to be advised." Although the policies fail to identify policy 47005 by number, it is clear from the time frame of the coverage that 47005 was in fact the underlying insurer. Thus Century may take advantage of the absolute pollution exclusion and is granted summary judgment with respect to these three policies.

It appears to the Court upon Examination of Exhibit A of the Second Amended Complaint[14] that these are the only claims against Century in this case. Therefore, with the grant of summary judgment, Century is dismissed from the case.

### 8. Central National Insurance Company of Omaha (Docket No. 212)

Central National Insurance Company of Omaha ("Central National") moves for summary judgment with respect to six policies: CNZ 14-09-24, covering January 1, 1977 to January 1, 1978; CNZ 14-18-57 and 14-18-58, both covering January 1, 1979 to December 1, 1979;[15] CNZ 14-18-80, covering December 1, 1979 to December 1, 1980; CNZ 14-18-85, covering December 1, 1980 to December 1, 1981, and CNZ 00-65-68, covering December 1, 1981 to December 1, 1982.

Each policy contained the following language:

> This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amounts and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.

(Exhs.3–8). The underlying umbrella policy during the time frame of the first policy was 47002; for the remaining policies the underlying umbrella policy was 47005.

For reasons set forth previously, the Court grants Central National's motion for summary judgment with respect to these six policies. It appears to the Court upon Examination of Exhibit A of the Second Amended Complaint that these are the only claims against Central National in this case. Therefore, with the grant of summary judgment, Central National is dismissed from the case.

### 9. First State Insurance Company (Docket No. 213)

This defendant ("First State") seeks summary judgment with respect to four policies: 924099, covering January 1, 1978 to January 1, 1979; 929205, covering December 1, 1979 to December 1, 1980;[16] 930719, covering December 1, 1980 to December 1, 1981; and 932297, covering December 1, 1981 to December 1, 1982.

Policy number 924099 involves calendar year 1978, a period outside the scope of either 47002 or 47005. Therefore it is not properly a subject of the motion. Summary

---

**13.** Exhibits 10 and 11 reference policies ZCX 003870 and ZCX 004287, respectively. The record does not contain the same provision with respect to policy ZCX 006039. However, from the context of the portion of the policy that is submitted, it appears that the policy was intended to provide the same coverage as the first two polices and to conform to the underlying insurance, and Gencorp makes no argument to the contrary.

**14.** Exhibit A is a chart of all of the policies from which Gencorp claims coverage. The Court at-

taches a copy of it as Exhibit A to this memorandum opinion.

**15.** The two policies provided different layers of insurance coverage.

**16.** This policy appears to be the same policy identified in the Exhibit A to the Second Amended Complaint as policy number 927498. *Compare* First State Exh. B at FS 000371 to Second Amended Complaint Exh. A at 33.

judgment is denied with respect to policy number 924099.[17]

The relevant language in the remaining three policies says the following:

> [T]his policy is subject to the same terms, definitions, exclusions and conditions (except as regards to the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the underlying umbrella policies stated in Insuring Agreement 1 prior to the happening of any occurrence for which claim is made hereunder.

(Exhs. B, C, and D). All three policies list Genco has the underlying policy. Policy 929205 refers specifically to Genco 47005. The last two policies say the Genco policy number will "be advised." However, it is apparent from the time frame that the applicable Genco policy was 47005. Thus First State is entitled to summary judgment with respect to the last three policies.

In sum, First State's motion for summary judgment is granted with respect to policy numbers 929205, 930719 and 932297. It is denied with respect to policy number 924099.

### 10. *Everest Reinsurance Company* (Docket No. 214)

This defendant ("Everest") seeks summary judgment on policies DXCDX 1282 and DXCDX 1283, both covering January 1, 1979 to December 1, 1979. The policies provide two different layers of insurance. The relevant language in both policies states:

> The insurance afforded by this policy is subject to the same warranties, terms, conditions and exclusions as are contained in the Underlying Insurance on the effective date of this policy, except, unless specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to in-

vestigate and defend, the amount and limits of liability, and any renewal agreement.

(Exhs. A and B). The "Underlying Insurance" in each policy is identified as Genco with a policy number "to be determined." Each policy fell under the time period covered by Genco 47005.

For reasons set forth previously, the Court finds that Everest can take advantage of the absolute pollution exclusion applied retroactively to Genco 47005. Accordingly, it grants summary judgment with respect to both policies.

Everest remains a defendant in this case because of claims related to other policies issued in years not covered by Genco policies 47002 or 47005.

### 11. *Gibraltar Casualty Company* (Docket No. 214)

This defendant ("Gibraltar") seeks summary judgment with respect to policies GMX 00332 and GMX 00333, both covering the period of December 1, 1979 to December 1, 1980. The policies provide different layers of insurance. The relevant language states:

> Except as may be otherwise provided by the terms and conditions of this policy, the insurance afforded by this policy shall follow the insuring agreements and is subject to the same warranties, terms, definitions, conditions, and exclusions, except as to any renewal agreement, as are contained in the Underlying Insurance identified in Item 5 of the Declarations on the effective date of this policy.

(Exhs. C and D). The "Underlying Insurance" is identified as a Genco policy with the number "to be determined." The policies were issued in the time period covered by Genco 47005. As a result, the absolute pollution exclusion is incorporated into the policies, and Gibraltar is entitled to summary judgment.

---

**17.** First State is clearly operating under a misconception as to the coverage period of policy 47005. It states in a footnote to its brief that the policy is effective from January 1, 1978 through January 1, 1982. (Brief at 3 n. 1). The footnote goes on to state that policy 932297 "has the benefit of the [absolute pollution exclusion] en-

dorsement for one of the twelve months for which it was in effect." (*Id.*). In fact, the policy has the benefit of the endorsement for all twelve months of its coverage. On the other hand, policy 924099 gets no benefit from the endorsement.

Gibraltar remains a defendant in this case because of claims related to other policies issued in years not covered by Genco policies 47002 or 47005.

### 12. Lumbermens Mutual Casualty Company (Docket No. 215)

This defendant ("LMC") seeks partial summary judgment with respect to policy 3SX 004 720, covering January 1, 1973 to January 1, 1976. The policy states in relevant part:

2. **Maintenance of Underlying Insurance** The insured shall maintain the underlying insurance in full force and effect during the entire period of this policy . . .

4. **Application of Underlying Insurance.** Except as otherwise stated herein and except with respect to (1) any obligation to investigate or defend any claim or suit, or (2) any obligation to renew, the insurance afforded by this policy shall conform to the underlying insurance. . . .

(Exh. 1). The policy names Continental Casualty Company ("Continental") as the underlying insurer. However, Continental was the underlying insurer only until January 1, 1975, when the Continental policy was terminated and Genco 47002 became the underlying policy.

LMC argues that because its contract required Gencorp to maintain underlying insurance, and because its contract "conform[ed] to the underlying insurance," (Exh. 1) the contract necessarily followed form to Genco 47002 when 47002 became the underlying insurer starting January 1, 1975. The Court finds the argument well taken and grants the motion for summary judgment with respect to the period of January 1, 1975 to January 1, 1976. LMC remains a defendant in the case because of claims related to the period of January 1, 1973 to January 1, 1975.

18. It is not clear to the Court from the record that the Genco policy is the policy "immediately preceding the layer of coverage" provided by XS 100597. However, Gencorp has made no argument to the contrary, and it appears from the

### 13. Associated International Insurance Company (Docket No. 216)

This defendant ("Associated") seeks summary judgment on policy numbers XS 100597, covering December 1, 1981 to December 1, 1982, and two policies numbered AEL 00285C, covering December 1, 1979 to December 1, 1980, and December 1, 1980 to December 1, 1981. The relevant language in XS 100597 states:

Except as may be inconsistent with this Policy, the coverage provided by this Policy shall follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Policy, including any change by endorsements. . . .

(Exh. A). "Underlying Insurance" is identified in the policy as "Genco and Certain Insurance Companies."[18] The time period of the policy is the period during which the underlying umbrella insurer was Genco 47005, rendering the retroactive absolute pollution exclusion applicable to this policy.

Similarly, policies AEL 00285C stated that they would provide coverage for harm "arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in item 2 of the Declarations and issued by Genco and certain Insurance Companies." (Exh. B). Item 2 of the declarations also refer to "Genco and Certain Insurance Companies." For reasons set forth previously, these policies thus incorporates the retroactive absolute pollution exclusion provided by Genco 47005.

Accordingly, Associated's motion for summary judgment is granted with respect to the policies at issue, i.e., XS 100597 and two policies numbered AEL 00285C. It appears to the Court upon examination of Exhibit A of the Second Amended Complaint that these are the only claims against Associated in this case. Therefore, with the grant of summary judgment, Associated is dismissed from the case.

Court's examination of dozens of policies that even if there were a layer of coverage between the Associated policy and the Genco policy, the "middle" policy also would follow form to the Genco policy, creating the same result.

*14. Fireman's Fund Insurance Company* (Docket No. 217)

This defendant ("Fireman's Fund") seeks summary judgment on seven policies: XLX 120 28 35, covering January 1, 1976 to January 1, 1977; XLX 126 71 67, covering January 1, 1977 to January 1, 1978; XLX 136 28 03, covering January 1, 1978 to January 1, 1979; XLX 136 92 99, covering January 1, 1979 to December 1, 1979; XLX 137 05 96, covering December 1, 1979 to December 1, 1980, XLX 143 72 21, covering December 1, 1980 to December 1, 1981; and XLX 148 48 25, covering December 1, 1981 to December 1, 1982.

The third policy, XLX 136 28 03, falls outside the period covered by either Genco 47002 or 47005 and is not properly the subject of this motion. Thus summary judgment is denied with respect to that policy.

Each policy contains the following language:

> The insurance afforded by this policy is subject to the same warranties, terms (including the terms used to describe the application of the limits of liability), conditions and exclusions as are contained in the underlying insurance on the effective date of this policy, except, unless otherwise specifically provided in this policy, any such warranties, terms, conditions or exclusions relating to premium, the obligation to investigate and defend, the amount and limits of liability, and any renewal agreement.

(Exhs. G, H, J, K, L and M). The underlying insurance on the effective dates of the six remaining policies was Genco 47002 (for XLX 120 28 35 and XLX 126 71 67) or Genco 47005 (XLX 136 92 99, XLX 137 05 96, XLX 143 72 21 and XLX 148 48 25). These policies thus incorporate the absolute pollution exclusion.

Thus summary judgment is granted with respect to policies XLX 120 28 35, XLX 126 71 67, XLX 136 92 99, XLX 137 05 96, XLX 143 72 21 and XLX 148 48 25. Summary judgment is denied with respect to policy XLX 136 28 03.

*15. AIU Insurance Company* (Docket No. 220)

This defendant ("AIU")· seeks summary judgment with respect to policies 75–100033, covering January 1, 1978 to January 1, 1979; 75–100792, covering January 1, 1979 to January 1, 1980,[19] 75–101747, covering December 1, 1979 to December 1, 1980; 75–102470, covering December 1, 1980 to December 1, 1981; and 75–102565, covering December 1, 1981 to December 1, 1982.

The first policy is outside the time period of coverage of either Genco 47002 or 47005 and is not the proper subject of this motion. Summary, judgment is therefore denied with respect to policy 75–100033.

The remaining policies had a clause which include the following form language:

> The Company agrees with the Insured named below, in consideration of the premium paid and subject to all the terms and conditions set forth below of Policy No. —— to be issued by —— including all renewals and rewrites thereof.

(Exhs. B through E). In the copies of the policies provided to the Court by AIU, only policy 75–102565 listed both Genco and the correct policy number, i.e., 47005. The remaining blanks had the phrase "T/B/A" in the blank accompanying the policy numbers. However, each policy with the exception of 75–102470 listed Genco in the second blank. The latter policy did not have the second blank filled in.[20]

The rather shoddy completion of the above form language is not fatal to AIU because it is clear that the last four policies fell within the period during which Genco 47005 provided the underlying umbrella insurance. Thus summary judgment is appropriate with respect to those policies.

---

**19.** AIU states in its brief that this policy's term was from January 1, 1979 to December 1, 1979. However, the Court's examination of the policy as provided by AIU shows it expires on January 1, 1980.

**20.** These details, gleaned from copies of the policies provided by AIU, contradict the representations by AIU in its memorandum accompanying its motion that each policy listed "TO BE ADV." in the space for a policy number and "GENCO Insurance Company" in the space for the insurer. *See* AIU memo at 3.

In sum, the Court grants summary judgment with respect to policies 75–100792, 75–101747, 75–102470 and 75–102565. It denies summary judgment with respect to policy 75–100033.

### 16. *Lexington Insurance Company* (Docket No. 221)

This defendant ("Lexington") moves for summary judgment on policy GC 5504678, covering January 1, 1976 to January 1, 1977. The policy's relevant language states:

> This policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount, and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies as stated in item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.

(Exh. A). Item 2 of the Declarations lists Genco 47002 as the underlying umbrella policy. For reasons set forth previously, Lexington is entitled to take advantage of the absolute pollution exclusion in 47002. Therefore the Court grants Lexington's motion for summary judgment.

It appears to the Court upon examination of Exhibit A of the Second Amended Complaint that this is the only claim against Lexington in this case. Therefore, with the grant of summary judgment, Lexington is dismissed from the case.

### 17. *Granite State Insurance Company* (Docket No. 222)

This defendant (Granite State) seeks summary judgment on policy SCLD 8094059, covering January 1, 1977 to January 1, 1978. The relevant language is as follows:

> The Company agrees with the Insured named below, in consideration the premium paid and subject to all of the terms and conditions set forth below that the insur-

ance afforded by this policy shall follow all of the terms and conditions of Policy No. TO BE ADV. issued by Genco Insurance Company including all renewals and rewrites thereof.

(Exh. A). Thus the policy refers to Genco as the underlying insurer, although like several other insurers it fails to provide the policy number. However, it is undisputed that policy 47002 was the Genco policy in effect during the time period covered by Granite State's policy. For reasons set forth previously, the Court grants Granite State's motion for summary judgment.

It appears to the Court upon examination of Exhibit A of the Second Amended Complaint that this is the only claim against Granite State in this case. Therefore, with the grant of summary judgment, Granite State is dismissed from the case.

### 18. *Republic Insurance Company* (Docket No. 223)

This defendant ("Republic") moves for summary judgment with respect to policies CDE 0609, which Republic claims covers the period of December 1, 1982 to December 1, 1983, and CDE 0798, which Republic claims covers the period of January 1, 1983 to January 1, 1984.[21] Republic purports to rely upon the absolute pollution exclusion in Genco 47005 to receive summary judgment on those policies. However, as of December 1, 1982, Genco 47005 was "cancelled and superseded" by another Genco policy, numbered 47005/82. (Genco 47005 at endorsement eighteen.). The portions of Republic's insurance policies that Republic has provided to the Court verify that the policies follow form to 47005/82, not 47005. The relevant language states:

> It is agreed that except only with respect to policy period, premium and limits of liability, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer umbrella

---

**21.** In yet another stumbling block to the Court's attempt to deal efficiently with this round of summary judgment motions, Republic provides no evidence of the coverage dates of the policies. The portions of the policies provided to the Court do not state the dates of coverage. The Court thus is left to rely upon Republic's representations in its unsworn memorandum. Such reliance works no prejudice upon Gencorp because the dates provided by Republic place the policy outside the period covered by the Genco policies at issue.

policy, GENCO INSURANCE LIMITED # 47005/82 and all renewals and replacements thereof. It is further agreed that all pre-printed terms and conditions hereon are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the first layer umbrella.

(Exhs. A and B) (capitalization in original). By its own terms, Republic follows form to 47005/82, not 47005. Because 47005/82 does not incorporate the absolute pollution exclusion, Republic cannot rely upon the exclusion. For this reason, Republic's motion for summary judgment is denied.[22]

### 19. *Allianz Versicherungs AG* (Docket No. 224)

■ This defendant ("Allianz") seeks summary judgment with respect to four policies. The first three are numbered H 0 001 459 and cover the periods of January 1, 1979 to January 1, 1980; December 1, 1979 to December 1, 1980; and December 1, 1980 to December 1, 1981. The fourth is numbered C 73 00 024 and covers December 1, 1981 to December 1, 1982.

None of the policies makes specific mention of the scope of coverage or whether the policies were to "follow form" to the underlying policy. In a section marked "Coverage," the policies either stated, "per form and endorsements attached/submitted" (Exhs. A and B) or "per information submitted." (Exhs. C and D). However, Allianz has provided copies of correspondence between the company and Gencorp indicating that the underlying Genco umbrella policy for the time period was "the lead wording" or "the lead wording applying to this program." (Allianz supp. memo, Docket No. 296, at Exhs. 1, 2). The Court is of the view that Allianz

has submitted evidence sufficient to indicate its policies followed form to Genco 47005.[23]

For reasons previously stated, Allianz is entitled to take advantage of the absolute pollution exclusion in the policy. Thus the Court grants Allianz' motion for summary judgment.

Allianz remains a defendant in this case because of claims related to policies issued in years not covered by Genco underlying policies 47002 and 47005.

## V. CONCLUSION

For the reasons set forth above, the Court disposes of the motions for summary judgment as follows:

The motion of the London Market Defendants (Docket No. 189), covering policies UJL0108 and UJLO109, is granted.

The motion of Federal Insurance Company (Docket No. 205), covering policy 79220025, is granted.

The motion of American Re–Insurance Company (Docket No. 208), covering policy M1027784, is granted.

The motion of International Insurance Company (Docket No. 209), covering policies XSI 5769, XSI 5932, XSI 7189, XSI 7190, XSI 7753 and XSI 7754, is granted.

The motion of Riunione Adriatica di Sicurta (Docket No. 210) is granted in part and denied in part. It is granted with respect to policies EL–1773, EL–3120 and EL–4261. It is denied with respect to policy EL–2401.

The motion of St. Paul Fire and Marine Insurance Company ("St.Paul") (Docket No. 211), covering policy 534XA6052, is granted. However, it should be noted that St. Paul sought summary judgment only on the third

---

22. Gencorp did not point out to the Court the distinction between 47005 and 47005/82. Nor did it point out to the Court any other policy the Court has previously noted is not the proper subject of summary judgment because it involved periods of time not covered by 47002 or 47005. The Court thus was left to ferret through a two-foot stack of memoranda and insurance policies to discover the shortcomings of several of the defendants' arguments.

23. Allianz' evidence is rather scanty on its link to the underlying Genco policy, and were its motion

standing alone, the Court would strongly consider denying it. However, the context of this case provides strong evidence that the upper-level policies were generally written to follow form to the underlying insurance. Given this overall setting, and given the fact Gencorp has not disputed Allianz' assertion that its policies followed form to Genco 47005, the Court is of the view that Allianz has submitted sufficient evidence to show it was also following Genco's "lead wording." (Supp. brief at Exh. 2)

year of this three-year policy and that Gencorp still has claims based upon the first two years of the policy.

The motion of Century Indemnity Company (Docket No. 212), covering policies ZCX 003870, ZCX 004287 and ZCX 006039, is granted. Because these were the only policies of Century Indemnity Company identified in the Second Amended Complaint, this defendant is dismissed from the case. ·

The motion of Central National Insurance Company of Omaha (Docket No. 212), covering policies CNZ 14–09–24, CNZ 14–18–57, CNZ 14–18–58, CNZ 14–18–80, CNZ 14–18–85 and CNZ 00–65–68, is granted. Because these were the only policies of Central National Insurance Company of Omaha identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of First State Insurance Company (Docket No. 213) is granted in part and denied in part. It is granted with respect to policies 929205, 930719 and 932297. It is denied with respect to policy 924099.

The motion of Everest Reinsurance Company (Docket No. 214), covering policies DXCDX 1282 and DXCDX 1285, is granted.

The motion of Gibraltar Casualty Company (Docket No. 214), covering policies GMX 00332 and GMX 00333, is granted.

The motion of Lumbermens Mutual Casualty Company ("LMC") (Docket No. 215), covering policy 3SX 004 720, is granted. However, it should be noted that LMC sought summary judgment only on the third year of this three-year policy and that Gencorp still has claims based upon the first two years of the policy.

The motion of Associated International Insurance Company (Docket No. 216), covering policies XS 100597 and two policies numbered AEL 00285C, is granted. Because these were the only policies of Associated International Insurance Company identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of Fireman's Fund Insurance Company (Docket No. 217) is granted in part and denied in part. It is granted with respect to policies XLX 120 28 35, XLX 126 71 67, XLX 136 92 99, XLX 137 05 96, XLX 143 72 21 and XLX 148 48 25. It is denied with respect to policy XLX 136 28 03.

The motion of AIU Insurance Company (Docket No. 220) is granted in part and denied in part. It is granted with respect to policies 75–100792, 75–101747, 75–102470 and 75–102565. It is denied with respect to policy 75–100033.

The motion of Lexington Insurance Company (Docket No. 221), covering policy GC 5504678, is granted. Because this was the only policy of Lexington Insurance Company identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of Granite State Insurance Company (Docket No. 222), covering policy SCLD 8094059, is granted. Because this was the only policy of Granite State Insurance Company identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of Republic Insurance Company (Docket No. 223), covering policies CDE 0609 and CDE 0798, is denied.

The motion of Allianz Versicherungs AG (Docket No. 224), covering three policies numbered H 0 001 459 and policy C 73 00 024, is granted.

The Court shall delay publishing a judgment entry until June 6, 1997. The purpose of the delay is to allow the parties to point out to the Court any factual mistake which the Court might have made in its numerous, discrete decisions in Part IV of this memorandum opinion. The Court emphasizes it is not inviting motions to reconsider its underlying analysis in Part III of the opinion; such argument should be saved for appeal. Rather, the Court, which has been critical of mistakes committed by the parties, acknowledges it likewise may have erred in one or more of its dozens of decisions involving particular policies. Any party wishing to point out errors with respect to Part IV of this opinion shall file objections on or before June 2, 1997.

## VI. RULE 54(b) CERTIFICATION

■ The Court is of the view, for the reasons articulated in this section of the

Court's memorandum opinion, that there is no just reason for delay of the entrance of a final judgment. Accordingly, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court, after the brief delay discussed in Part V *supra*, shall enter final judgment with respect to the claims raised by the defendants in this motion process.

Rule 54(b) of the Federal Rules of Civil Procedure provides that:

> (b) **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b).

 Rule 54(b) was enacted as "a response to the need created by the liberal joinder provisions of the Federal Rules of Civil Procedure to revise 'what should be treated as a judicial unit for purposes of appellate jurisdiction.'" *Corrosioneering v. Thyssen Environmental Systems,* 807 F.2d 1279, 1282 (6th Cir.1986) (citation omitted). The Rule " 'attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties.'" *Id.* (citations omitted). The determination of whether to allow for an appeal pursuant to Rule 54(b) is a matter left to the discretion of the district court. *Id.*

The Rule itself states that the district court must find that there is no just reason

for delay of the appeal. Fed.R.Civ.P. 54(b). However, the Sixth Circuit has indicated that in order to avoid a finding of abuse of discretion in the certification of an appeal pursuant to Rule 54(b), the "district court should do more than just recite the Rule 54(b) formula of 'no just reason for delay.'" *Id.; Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 61 (6th Cir.1986). As the Supreme Court explained in *Protective Committee v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968):

> It is essential, however, that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.

*Id.* at 434, 88 S.Ct. at 1168.

The Sixth Circuit set forth a "nonexhaustive list" of factors to consider in *Corrosioneering, supra,* as follows:

> (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like. Depending upon the factors of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

*Corrosioneering,* 807 F.2d at 1283 (quoting *Allis–Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360 (3d Cir.1975)). The Court now proceeds to highlight the factors relevant to its determination to certify a final judgment in the instant case.

With respect to the first *Corrosioneering* factor, primary in the Court's consideration is the impact the instant decision will have on

the remaining claims in the case. This is massive and complex insurance litigation. Gencorp's complaint listed 104 insurance policies upon which it seeks coverage. In this memorandum opinion, the Court has held that Gencorp has no pollution-related coverage at all in forty-nine of those policies and limited pollution-related coverage in two other policies. Thus nearly half of Gencorp's policies have been deemed to provide no coverage for pollution-related matters. This decision obviously impacts Gencorp's potential liability and could affect liability faced by the remaining defendants. As a practical matter, if the Court's analysis in the instant opinion is incorrect, and its error is not corrected by appeal at this stage of the proceedings, the error would be likely to taint discovery, motion practice and trial with respect to the remaining policies. Thus an appeal at this time would "best serve[ ] the needs of the parties," *Corrosioneering*, 807 F.2d at 1282, by ensuring that future developments in the case will not be misguided.

With respect to the second factor, given the amount of money at stake and the unique nature of the legal issues, the Court is of the view that the need for review would not be mooted by future developments in the district court. If the appeals court declined review at this juncture, it is a near-certainty that it will be reviewing the merits of this opinion at a later time.

With respect to the third factor, the Court believes there is little possibility that the appeals court will face the same issue a second time at some point in the future. This was the point in the case at which the application of the absolute pollution exclusion was litigated. It will not arise again in this case.

With respect to the fourth factor, because the judgment in this case favors the defendants, the issue of potential set-off against a judgment is not present.

Finally, with respect to miscellaneous factors, the Court is of the view that the disadvantage of delay inherent in a Rule 54(b) appeal is outweighed by the advantage of clarifying issues for the continuance and conclusion of this case.

For the reasons stated above and pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds and orders that there is no just reason for delay, beyond the slight delay discussed in part V *supra*, in entering final judgment with respect to the summary judgment motions addressed in this memorandum opinion.

IT IS SO ORDERED.

*EXHIBIT A*
EXCESS INSURANCE POLICIES

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
| --- | --- | --- | --- |
| Adriatica | 1/1/78–1/1/79 | EL 2401 | $500K p/o $15M e/o $5.5M e/o $1M |
| Adriatica | 1/1/77–1/1/78 | EL#1773 | $500K p/o $15M e/o $5M e/o $1M |
| Adriatica | 12/1/79–12/1/80 | EL79–4261 | $500K p/o $15M e/o $5.5M e/o $1M |
| Adriatica | 1/1/79–12/1/79 | EL# 3120 | $500K p/o $15M e/o $5.5M e/o $1M |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| AIU | 12/1/79–12/1/80 | 75101747 | $5M p<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$500K |
| AIU | 12/1/81–12/1/82 | 75–102565 | $5M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K . |
| AIU | 12/1/80–12/1/81 | 75–102470 | $5M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| AIU | 1/1/79–12/1/79 | 75100792 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| AIU | 1/1/78–1/1/79 | 75–100033 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Allianz | 12/1/80–12/1/81 | H0001459 | $500K p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Allianz | 1/1/78–1/1/79 | HO 001459 | $500K p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Allianz | 12/1/79–12/1/80 | HO 001459 | $500K p/o<br>$15M e/o<br>$5.5M e/o<br>$500K |
| Allianz | 12/1/81–12/1/82 | C7300024 | $500K p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| Allianz | 1/1/79–12/1/79 | H0001459 | $500K p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| American Home | 12/1/69–1/1/73 | CE355705 | $2.5M p/o |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| | | | $5M e/o<br>$5M e/o<br>$1M |
| American Home | 12/1/69–1/1/73 | CE355704 | $2.5M p/o<br>$15M e/o<br>$5M e/o<br>$5M e/o<br>$1M |
| American Home | 12/1/66–12/1/69 | CE 36–26–15 | $2.5M p/o<br>$5M e/o<br>$5M e/o<br>$1M |
| American Home | 12/1/66–12/1/69 | CE 35–26–14 | $1M p/o<br>$15M e/o<br>$10M e/o<br>$1M |
| American Reinsurance | 1/1/76–1/1/77 | M 1027784 | $5M p/o<br>$15M e/o<br>$5M e/o<br>$1M |
| American Reinsurance | 12/1/69–1/1/73 | MOO88550 | $1.5M p/o<br>$15M e/o<br>$5M e/o<br>$5M e/o<br>$1M |
| American Reinsurance | 12/1/69–1/1/73 | M0088535 | $2.5M P/O<br>$5M e/o<br>$5M e/o<br>$1M |
| American Reinsurance | 7/1/63–12/1/66 | M6665–0001 | $2.5M p/o<br>$5M e/o<br>$5M e/o<br>$1M |
| American Reinsurance | 12/1/66–12/1/69 | H6665–2001 | $2.5 p/o<br>$5M e/o<br>$5M e/o<br>$1M |
| American Reinsurance | 12/1/66–12/1/69 | H6665–2002 | $1M p/o<br>$15M e/o<br>$10M e/o<br>$1M |
| Associated International | 12/1/80–12/1/81 | AEL 00285c | $3.5M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Associated International | 12/1/79–12/1/80 | AEL00285c | $3.5M p/o<br>$15M e/o<br>$5.5M e/o |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| | | | $1M |
| Associated International | 12/1/81–12/1/82 | XS 100597 | $3.5M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| CIGNA Specialty (formerly California Union) | 12/1/81–12/1/82 | ZCX 006039 | $3M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| CIGNA Specialty (formerly California Union) | 12/1/79–12/1/80 | ZCX003870 | $3M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| CIGNA Specialty (formerly California Union) | 12/1/80–12/1/81 | ZCX 004287 | $3M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Central National | 1/1/77–1/7/78 | CNZ140924 | $500K p/o<br>$15M e/o<br>$5M e/o<br>$1M |
| Central National | 1/1/79–12/1/79 | CNX141858 | $3M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Central National | 12/1/81–12/1/82 | CNZ 00–6568 | $1M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Central National | 1/1/79–12/1/79 | CNZ141857 | $500K p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Central National | 12/1/80–12/1/81 | CNZ 141885 | $1M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| Central National | 12/1/79–12/l/80 | CNZ 14–18–80 | $1M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Continental Casualty | 12/1/69–1/1/73 | RDX019125771 | $6M p/o<br>$15M e/o<br>$5M e/o<br>$5M e/o<br>$1M |
| Dairyland | 12/1/82–12/1/83 | XL17207 | $2M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Employers Insurance Of Wausau | 12/1/84–12/1/85 | 5735–00–102532 | $1.5M p/o<br>$30M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Employers Reinsurance | 12/2/66–12/1/69 | S 1693133 | $2M p/o<br>$15M e/o<br>$10M e/o<br>$1M |
| Federal Insurance | 1/1/74–1/1/75 | 79220008 | $10M e/o<br>$10M e/o<br>$1M |
| Federal Insurance | 1/1/73–1/1/74 | 79220007 | $10M e/o<br>$10M e/o<br>$1M |
| Federal Insurance | 1/1/75–1/1/76 | 79220025 | $10M e/o<br>$10M e/o<br>$1M |
| Fidelity & Casualty | 12/1/69–1/1/73 | LX 633 27 61 | $5M p/o<br>$15M e/o<br>$5M e/o<br>$5M e/o<br>$1M |
| Fidelity & Casualty | 12/1/66–12/1/69 | #15 LX6329144 | $5M p/o<br>$15M e/o<br>$10M e/o<br>$1M |
| Fireman's Fund | 1/1/78–1/1/79 | XLX 1362803 | $2M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| Fireman's Fund | 1/1/79–12/1/79 | XLX1369299 | $2M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M<br>$1M |
| Fireman's Fund | 12/1/80–12/1/81 | XLX1437221 | $2M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Fireman's Fund | 1/1/77–1/1/78 | XLX1267167 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5M e/o<br>$1M |
| Fireman's Fund | 12/1/79–12/1/80 | XLX1370596 | $2M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Fireman's Fund | 1/1/76–1/1/77 | XLX 120 2835 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5M e/o<br>$1M |
| Fireman's Fund | 12/1/81–12/1/82 | XLX 148425 | $2M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| First State | 1/1/77–1/1/78 | 924099 | $2M p/o<br>$30M e/o<br>$15M e/o<br>$5M e/o<br>$1M |
| First State | 1/1/79–12/1/79 | 927498 | $2M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| First State | 12/1/81–12/1/82 | 932297 | $2M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| First State | 12/1/80–12/1/81 | 930719 | $2M p/o<br>$30M e/o<br>$10M e/o |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| | | | $5M e/o<br>$5.5M e/o<br>$500K |
| First State | 1/1/78–1/1/79 | 925932 | $2M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| First State | 12/1/82–12/1/83 | 934302 | $5M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| First State | 12/1/79–12/1/80 | 929205 | $2M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Gibraltar | 12/1/79–12/1/80 | GMX00332 | $500K p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Gibraltar | 12/1/81–12/1/82 | GMX 01416 | $5M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Gibraltar | 12/1/79–12/1/80 | GMX00333 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Gibraltar | 12/1/82–12/1/83 | GMX01945 | $1M p/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Granite State | 1/1/77–1/1/78 | SCLD8094059 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5M e/o<br>$1M |
| INA | 12/1/83–12/1/84 | XCP 155930 | $5M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$1M |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| INA | 12/1/82–12/1/83 | XCP145008 | $3M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| INA | 1/1/78–1/1/79 | XBC 151504 | $2.5M p/o<br>$30M e/o<br>$15 e/o<br>$5.5M e/o<br>$1M |
| Integrity | 1/1/78–1/1/79 | XL200213 | $1.5M p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Integrity | 12/1/80–12/1/81 | XL 201 589 | $2.5M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Integrity | 12/1/84–12/1/85 | XL 207890 | $6M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Integrity | 1/1/79–12/1/79 | XL200474 | $1.5M p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Integrity | 12/1/82–12/1/83 | XL206898 | $2.5M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K e/o |
| Integrity | 12/1/81–12/1/82 | XL 203717 | $2.5M p/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| Integrity | 12/1/79–12/1/80 | XL201399 | $2.5M p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| International | 12/1/84–12/1/85 | 522 048513 6 | $10.5M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| International | 12/1/83–12/1/84 | 522 0287082 | $20M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| ISLIC | 12/1/80–12/1/81 | XS1 7189 | $1.5M p/o<br><br>$5M e/o<br>$5.5M e/o<br>$500K |
| ISLIC | 12/1/79–12/1/80 | XS15769 | $1.5M p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| ISLIC | 12/1/79–12/1/80 | XSI 5932 | $1M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| ISLIC | 12/1/81–12/1/82 | XSI 7753 | $1.5M p/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| ISLIC | 12/1/81–12/1/82 | XSI 7754 | $1M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| ISLIC | 12/1/80–12/1/80 | XSI–7190 | $1M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| Lexington | 1/1/76–1/1/77 | GGC 550 4678 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5M e/o<br>$1M |
| Lexington | 1/1/76–1/1/77 | GC 550 4678 | $5M p/o<br>$15M e/o<br>$5M e/o<br>$1M |
| Lumbermens Mutual | 1/1/73–1/1/76 | 3sX004720 | $5M e/o<br>$5M e/o<br>$1M |
| National Casualty | 12/1/83–12/1/84 | XU 000067 | $4M p/o |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| | | | $10M e/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| National Casualty | 12/1/82–12/1/83 | XU000002 | $2M p/o<br>$30M e/o<br>$10M e/o<br>$5M e/o<br>$5.5M e/o<br>$500K |
| National Union | 12/1/83–12/1/84 | 9608443 | $2M p/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| Prudential Reinsurance | 1/1/78–1/1/79 | DXC DX 0645 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Prudential Reinsurance | 1/1/79–12/1/79 | DXC DX 1283 | $5M p/o<br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Prudential Reinsurance | 1/1/79–12/1/79 | DXCDXI282 | $500K p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Prudential Reinsurance | 1/1/78–1/1/79 | DXC DX 0646 | $500K p/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Republic | 12/1/83–12/1/84 | CDE 0798 | $1M p/o<br>$5M e/o<br>$5.5M e/o<br>$1M |
| Republic | 12/1/82–12/1/83 | CDE0609 | $1M p/o<br>$5M e/o<br>$5.5M e/o<br>$500k |
| St. Paul | 1/1/74–1/1/75 | 534XA 6052 | $5M e/o<br>$5M e/o<br>$5M e/o<br>$10M e/o<br>$1M |
| St. Paul | 1/1/73–1/1/74 | 534XA6052 | $5M e/o<br>$10M e/o<br>$5M e/o<br>$5M e/o |

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| | | | $1M |
| St. Paul | 1/1/75–1/1/76 | 534XA6052 | $5M e/o $5M e/o $5M e/o $10M e/o $1M |
| Twin City | 12/1/82–12/1/83 | TXS101686 | $3.5M p/o $10M e/o $5.5M e/o $500K |
| United National | 12/1/83–12/1/84 | XTP 11010 | $5M p/o $30M e/o $10M e/o $5M e/o $5.5M e/o $1M |
| United National | 12/1/82–12/1/83 | XTP 1104 | $5M p/o $30M e/o $10M e/o $5M e/o $5.5M e/o $500K |
| Lloyd's and London Market Companies, including: | 1/1/77–1/1/78 | 881 UJL0109 | $5,550,000 p/o $30M e/o $15M e/o $5M e/o $1M |

Syndicates: 618, 278, 948, 989, 279, 35, 918, 179, 694, 471, 727, 636

London Companies:
Stronghold Insurance Co. Ltd.

| Lloyd's and London Market Companies, including: | 1/1/77–1/1/78 | 881/UJL0108 | $5M p/o |
| | | | $15M e/o $5M e/o $1M |

Syndicates: 618, 278, 948, 989, 279 126, 35, 276, 918, 694, 727

London Companies:
Stronghold Insurance Co. Ltd.
CNA Reinsurance of London Ltd.
Bellefonte Insurance Co. Ltd.
Mentor Insurance Co. Ltd.

| Lloyd's and London Market Companies, including: | 1/1/78–1/1/79 | UKL0098 | $9.5M p/o |
| | | | $15M e/o $5.5M e/o $1M |

Syndicates: To be determined

| EXCESS INSURER | PERIOD OF COVERAGE | POLICY NUMBER | LIMITS |
|---|---|---|---|
| London Companies:<br>Walbrook Insurance Co. Ltd.<br>"Winterthur" Swiss Ins. Co.<br>El Paso Insurance Co. Ltd.<br>Dart Insurance Co. Ltd.<br>Bermuda Fire & Marine Ins. Co. Ltd.<br>Mutual Reinsurance Co. Ltd.<br>St. Katherine Ins. Co. Ltd.<br>North Atlantic Ins. Co. Ltd.<br>Lexington Insurance Co. | | | |
| Lloyd's and London Market Companies, including: | 1/1/78–1/1/79 | UKL0099 | $3M p/o<br><br>$30M e/o<br>$15M e/o<br>$5.5M e/o<br>$1M |
| Syndicates: 989, 279, 661, 518, 694, 471, 727, 35 | | | |

---

## MEMORANDUM OPINION AND ORDER ON MOTIONS

On May 20, 1997, the Court issued a memorandum opinion disposing of nineteen motions for summary judgment or partial summary judgment in this case (Docket No. 332). Because the Court was required in Part IV of the opinion to make dozens of decisions on the details of policies which were not addressed in the briefs, the Court gave the parties the opportunity, prior to entry of judgment, to point out any factual errors the Court may have committed. Several parties have filed motions to correct the memorandum opinion. The Court shall consider each motion in order.

### 1. Gibraltar Casualty Company (Docket Nos. 339 and 346) [1]

The Court granted this defendant's ("Gibraltar's") motion for summary judgment (Docket No. 214) with respect to policies GMX 00332 GMX 00333. Gibraltar now seeks summary judgment on a third policy for which it had not previously sought summary judgment: policy GMX 01416, which covered the period from December 1, 1981 to December 1, 1982. Gibraltar provides an authenticated copy of that policy which states that the underlying insurance is "Genco Insurance Umbrella Liability Policy No. (to be detemined)."

For cause, Gibraltar states that it had not previously moved for summary judgment on this policy because of the representations by Genco in its affirmative defense that Genco's policy 47005, which incorporated the absolute pollution exclusion at issue in this case, covered a period ending on January 1, 1982. See Genco's Affirmative Defense, Docket No. 148 at p. 3.

Although the Court is not enamored with considering an additional policy at this point in the proceedings, it is of the view that doing so works no prejudice upon Gencorp. Gencorp's own filings concede that policy GMX 01416 comes within the time period during which Genco 47005 was the underlying insurer. See Second Amended Complaint at Exh. A. Accordingly, for the reasons set forth in its prior memorandum opinion, the Court grants summary judgment with respect to policy GMX 01416. Gibraltar re-

---

1. This defendant filed two virtually identical motions to amend. The sole difference was the fact that the second motion included an affidavit containing an original signature that had not been provided with the first motion.

mains a defendant in the case because it also has a policy involving a time period not covered by Genco 47002 or Genco 47005, the two policies incorporating the absolute pollution exclusion.

### 2. Certain Underwriters at Lloyd's, London (Docket No. 340)

This defendant ("Certain Underwriters") points to no error in Part IV of the memorandum opinion, as solicited by the Court. Instead, it brings to the Court's attention two errors in the "Background Facts" section, Part II of the opinion. It notes that the Court failed to note that one of the sites at issue in this lawsuit is located in New Hampshire; the Court had referred only to Ohio, Michigan and Connecticut. It also notes that in the second paragraph of footnote 1 on page 3, the Court inadvertently used the word "Gencorp" instead of "Genco."

Although this motion was beyond the scope of the Court's invitation to correct, the points are well taken. The Court grants Certain Underwriters' motion to correct and hereby acknowledges that 1) one of the sites at issue is located in New Hampshire, and 2) the first word of the second paragraph of footnote 1 should read "Genco."

### 3. Riunione Adriatica di Sicurta (Docket No. 341)

This defendant ("Riunione") was granted summary judgment with respect to three of four policies. However, the Court denied summary judgment with respect to policy EL–2401 because it covered the period of January 1, 1978 to January 1, 1979, a period not covered by either Genco 47002 or Genco 47005.

Riunione concedes that the Court was correct in noting that the coverage period of policy EL–2401 was outside the period covered by the Genco policies. However, Riunione argues that the Court failed to acknowl-

edge that policy EL–2401 nevertheless listed Genco 47002 as the policy to which it followed form. Indeed, policy EL–2401 does list Genco 47002 as the "Primary Insurance" policy. (Docket 210 at Exh. B). However, a fair reading of the policy as a whole raises an ambiguity not suitable for resolution via summary judgment. The term "Primary Insurance" is normally understood to be the underlying policy active during the time period covered by the excess policy. In this case, Genco 47002, which terminated on January 1, 1978, was not the underlying policy during the time period of policy EL–2401.

Thus the contract reveals inconsistencies raising a fact question of whether the contracting parties intended an outdated policy to be the guidepost for insurance coverage or whether inserting "Genco 47002" into the policy was a mere mistake and the parties intended the contract to follow form to the actual underlying insurance policy.[2] Because of this ambiguity, the Court denies the motion of Riunione to reconsider its prior denial of summary judgment with respect to policy EL–2401.

### 4. First State Insurance Company (Docket No. 342)

This defendant ("First State") initially filed for summary judgment with respect to four policies (nos. 929205, 930719, 932297 and 924099) (Docket No. 213). On December 30, 1996, the Court granted First State's motion to supplement its original motion by adding a fifth policy, number 927498, which covered the time period of January 1, 1979 to December 1, 1979 (Docket No. 237). However, in preparing its memorandum opinion, the Court referred to the original motion for summary judgment and overlooked the supplemental motion. Therefore, the Court did not consider policy number 927498. The latter policy listed Genco 47005, which contains the absolute pollution exclusion, as the underlying insurer. For reasons set forth in its

2. The Court observed several times in its prior memorandum opinion that the blanks in the insurance policies at issue were not always filled in with care. In fact, the Court made some logical assumptions that some insurance policies which neglected to specifically list Genco 47002 or 47005 as the underlying policy nonetheless were

following form to those policies. In light of the Court's attempt to elevate substance over form, it would be inconsistent to interpret what is quite possibly a clerical error to insulate Riunionen from liability for a period not covered by the absolute pollution exclusions.

prior memorandum opinion, the Court grants First State's supplemental motion for summary judgment with respect to policy number 927498.

In its prior opinion, the Court granted First State's motion for summary judgment with respect to three of the four policies and denied it with respect to policy 924099 because the latter policy covered the period of January 1, 1978 to January 1, 1979, a time period outside the Genco underlying policies. However, First State now states that the Court based its denial of summary judgment on erroneous information. First State says it inadvertently submitted an incorrect policy, numbered 925932, in place of policy 924099.[3] It was policy 925932 which covered the period of January 1, 1978 to January 1, 1979 and thus was not suitable for summary judgment. First State has now submitted a copy of policy 924099 which reveals that its period of coverage was January 1, 1977, to January 1, 1978, a time period during which Genco 47002 was the underlying policy.

First State has satisfied the Court that policy 924099 does cover a period during which the absolute pollution exclusion applies. Therefore, the Court vacates its previous denial of summary judgment with respect to policy 924099 and grants summary judgment with respect to that policy.

In sum, First State's motion to correct is granted. First State has been granted summary judgment with respect to policies 929205, 930719, 932297, 924099 and 927498.

### 5. Lexington Insurance Company (Docket No 343)

This defendant ("Lexington") moved for and was granted summary judgment with respect to policy GC 5504678. The Court stated in its memorandum opinion: "It appears to the Court upon examination of Exhibit A of the Second Amended Complaint that this is the only claim against Lexington in this case. Therefore, with the grant of summary judgment, Lexington is dismissed from the case." (Mem. op. at 32).

Lexington now informs the Court it is potentially liable under another policy. An entity identified as "Lexington Insurance Company, Ltd." in the Second Amended Complaint is alleged to be one of several defendants which had partial interests in a policy issued to "London Market Companies" which covers January 1, 1978 to January 1, 1979. *See* Second Amended Complaint at Exh. A p. 40. Because "Lexington Insurance Company, Ltd.," and "Lexington Insurance Company" were named as two separate defendants in the Second Amended Complaint, the Court proceeded under the assumption that they were two separate entities. Apparently they are in fact one entity improperly named as two defendants. Accordingly, although the Court reaffirms its grant of summary judgment with respect to policy GC 5504678, Lexington shall not be dismissed as a defendant in the case because of its apparent potential liability under the guise "Lexington Insurance Company, Ltd."

### 6. St. Paul Fire and Marine Insurance Company (Docket No.344)

This defendant ("St.Paul") moved for and was granted partial summary judgment on policy 534XA6052, which covered January 1, 1973 through January 1, 1976. Summary judgment was granted with respect to the final year of the three-year contract because Genco 47002 was the underlying insurer during the time period commencing January 1, 1975. The Court made clear that St. Paul still faced liability for the first two years of the contract.

St. Paul has no quarrel with the Court's analysis or conclusion. However, it states that Exhibit A to the Court's opinion, reproduced from Exhibit A to the Second Amended Complaint, "incorrectly suggests" that St. Paul actually had three separate one-year contracts rather than a single three-year con-

---

**3.** The confusion was multiplied by a chance photocopying oversight. Policy 925932 states at the top: "925932 / renewal of no. 924099." However, in the version submitted to the Court the number "925932" was cut off in the photocopying process. As a result the first number on the policy was 924099, leading the Court to believe that the policy submitted, covering the year 1978, was policy 924099.

tract. St. Paul asks that Exhibit A be amended to "avoid possible future confusion."

The Court's review of Exhibit A reveals that the policy at issue, 534XA6052, is broken down into three separate annual time periods, possibly suggesting three different contracts were executed. However, the exhibit correctly links each time period with the same policy number. The Court finds no practical significance in the distinction St. Paul is trying to make, given the fact that the Court clearly and correctly stated that St. Paul faced potential liability for the first two years of its contract and was relieved of potential liability for the third year. The Court sees no need to amend Exhibit A. St. Paul's request is thus denied.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons set forth in the Memorandum Opinion filed May 20, 1997 and in the subsequent Memorandum Opinion filed June 6, 1997, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the pending motions for summary judgment are resolved as follows:

The motion of the London Market Defendants (Docket No. 189), covering policies UJL0108 and UJLO109, is granted.

The motion of Federal Insurance Company (Docket No. 205), covering policy 79220025, is granted.

The motion of American Re–Insurance Company (Docket No. 208), covering policy M1027784, is granted.

The motion of International Insurance Company (Docket No. 209), covering policies XSI 5769, XSI 5932, XSI 7189, XSI 7190, XSI 7753 and XSI 7754, is granted.

The motion of Riunione Adriatica di Sicurta (Docket No. 210) is granted in part and denied in part. It is granted with respect to policies EL–1773, EL–3120 and EL–4261. It is denied with respect to policy EL–2401.

The motion of St. Paul Fire and Marine Insurance Company ("St.Paul") (Docket No. 211), covering policy 534XA6052, is granted. However, it should be noted that St. Paul sought summary judgment only on the third year of this three-year policy and that Gencorp still has claims based upon the first two years of the policy.

The motion of Century Indemnity Company (Docket No. 212), covering policies ZCX 003870, ZCX 004287 and ZCX 006039, is granted. Because these were the only policies of Century Indemnity Company identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of Central National Insurance Company of Omaha (Docket No. 212), covering policies CNZ 14–09–24, CNZ 14–18–57, CNZ 14–18–58, CNZ 14–18–80, CNZ 14–18–85 and CNZ 00–65–68, is granted. Because these were the only policies of Central National Insurance Company of Omaha identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of First State Insurance Company (Docket No. 213), covering policies 929205, 930719, 932297, and 924099, is granted. The supplemental motion of First State Insurance Company (Docket No. 237) covering policy 927498, is also granted.

The motion of Everest Reinsurance Company (Docket No. 214), covering policies DXCDX 1282 and DXCDX 1283, is granted.

The motion of Gibraltar Casualty Company (Docket No. 214), covering policies GMX 00332 and GMX 00333, is granted. The supplemental motion of Gibraltar Casualty Company (Docket No. 339), covering policy GMX 01416, is also granted.

The motion of Lumbermens Mutual Casualty Company ("LMC") (Docket No. 215), covering policy 3SX 004 720, is granted. However, it should be noted that LMC sought summary judgment only on the third year of this three-year policy and that Gencorp still has claims based upon the first two years of the policy.

The motion of Associated international Insurance Company (Docket No. 216), covering policies XS 100597 and two policies numbered AEL 00285C, is granted. Because these were the only policies of Associated International Insurance Company identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of Fireman's Fund Insurance Company (Docket No. 217) is granted in part and denied in part. It is granted with respect to policies XLX 120 28 35, XLX 126 71 67, XLX 136 92 99, XLX 137 05 96, XLX 143 72 21 and XLX 148 48 25. It is denied with respect to policy XLX 136 28 03.

The motion of AIU Insurance Company (Docket No. 220) is granted in part and denied in part. It is granted with respect to policies 75–100792, 75–101747, 75–102470 and 75–102565. It is denied with respect to policy 75–100033.

The motion of Lexington Insurance Company (Docket No. 221), covering policy GC 5504678, is granted.

The motion of Granite State Insurance Company (Docket No. 222), covering policy SCLD 8094059, is granted. Because this was the only policy of Granite State Insurance Company identified in the Second Amended Complaint, this defendant is dismissed from the case.

The motion of Republic Insurance Company (Docket No. 223), covering policies CDE 0609 and CDE 0798, is denied.

The motion of Allianz Versicherungs AG (Docket No. 224), covering three policies numbered H 0 001 459 and policy C 73 00 024, is granted.

For the reasons set forth in Part VI of its memorandum opinion of May 20, 1997, the Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay of entry of final judgment with respect to the summary judgments granted.

IT IS SO ORDERED.